IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>SERGIO SOSA,<br><br>  Defendant. | MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 2:20-CR-0073 DS<br><br>Judge David Sam |

This matter is before the court on defendant Sergio Sosa's pro se motion for compassionate release. The court has considered the briefing and received input from the United States Probation Office. Mr. Sosa is a 72-year-old man suffering from ongoing health concerns including uncontrolled hypertension, stage 3 chronic kidney disease, elevated prostate specific antigens (PSA) indicative of a heightened risk of prostate cancer, and hyperlipidemia. He is seeking compassionate release due to his rapidly deteriorating health and the BOP's failure to provide necessary care for his medical conditions. For the following reasons, the court grants his motion.

Mr. Sosa admits that he has not fully exhausted his administrative remedies before petitioning the court for relief under 18 U.S.C. § 3582(c)(1)(A). He requests that the court waive the requirement that he complete the administrative remedy process prior to the court considering his motion. On July 17, 2023, Mr. Sosa submitted a request for compassionate release consideration to the warden of his institution. On August 15, 2023, the warden denied

1

this request. On August 24, 2023, Mr. Sosa filed a request for reconsideration of the denial of his compassionate release request. This request was also denied. He then filed a Regional Administrative Remedy Appeal, which the Administrative Remedy Coordinator received on September 29, 2023.  The Coordinator's response was due November 28, 2023, but Mr. Sosa has still not received it. If that appeal is eventually denied, Mr. Sosa will have to file a Central Office Remedy Appeal and wait for that response.

Meanwhile, Mr. Sosa's health is deteriorating. He has provided the court with medical records which detail his ongoing health concerns, including uncontrolled hypertension; chronic kidney disease, stage 3b; elevated prostate specific antigens (PSA); and hyperlipidemia. Since his self-surrender to the Federal Correctional Complex (FCC) in Florence, Colorado, on April 7, 2023, Mr. Sosa's examinations show consistently high blood pressure levels. In an effort to treat his hypertension, medical staff prescribed him Lisinopril and Hydrochlorothiazide.

The defendant was hospitalized on May 8 when his condition appeared to be worsening rapidly and he failed to respond to changes in medication. On May 30, the defendant was diagnosed with chronic kidney disease that was "LIKELY headed to dialysis. High risk of stroke, heart attack, renal failure." ECF 168-5. He was referred for a renal ultrasound, the results of which are unknown, and a consultation with a kidney specialist which has not happened. Also on May 30, the defendant's bloodwork showed elevated PSA levels, which have been identified as pre-indicators of prostate cancer. The defendant was referred for a consultation with a urologist. At the filing of Mr. Sosa's motion, no consultation had been completed.

Mr. Sosa requests that the court waive the exhaustion requirement, so that it can consider his motion. The Tenth Circuit Court of Appeals has stated that "We have occasionally waived exhaustion requirements where irreparable harm would otherwise result." *Steck v. Checker*, 393

Fed.Appx. 558, 560 (10th Cir. 2010) (citing *Forest Guardians v. U.S. Forest Serv.,* 579 F.3d, 1114, 1121-22 (10th Cir. 2009). The court in *Steck* went on to explain that the petitioner in that case had failed to point to any reason that remaining in his current BOP facility would constitute irreparable injury. According to the court, it would be "an undoubted inconvenience" to the petitioner, but not cause irreparable harm. Mr. Sosa, on the other hand, has identified compelling reasons why failure to grant him compassionate release would constitute irreparable harm.

Mr. Sosa has been trying for several months to exhaust his administrative remedies. In the meantime, his health has declined, and the BOP does not appear to be providing timely care for him. His doctor of many years reviewed his BOP medical record and concluded that the medication for Mr. Sosa's very high blood pressure, which is a high-risk factor for a stroke or heart attack, needs to be closely monitored. The doctor also noted that Mr. Sosa's increasingly high PSA indicates worsening prostate inflammation or cancer that needs to be carefully supervised. His cholesterol is also high, and he needs to have a cardiac stress test and follow-up by a cardiologist. His kidney disease also needs to be carefully supervised to avoid more renal damage. The doctor agreed with the BOP doctor that Mr. Sosa is at high risk of stroke, heart attack, or renal failure if the symptoms persist and are not followed closely by a medical provider. The doctor said, "He is a high-risk patient and needs follow up." ECF 168-9. The inadequate care that the BOP has provided is putting Mr. Sosa at serious risk of irreparable harm. Therefore, the court finds it appropriate to waive the requirement that Mr. Sosa exhaust his administrative remedies in this case.

The court may reduce Mr. Sosa's sentence and release him only if the following three requirements are met: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with

3

applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. Maumau,* 993 F.3d 821, 831 (10th Cir. 2021); *see also United States v. Hald*, 8 F.4th 932, 937-38 (10th Cir. 2021) (discussing this "three-step test" and citing *Maumau*, 993 F.3d at 831, and *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021)). The court need not address these requirements in any particular order. *Hald,* 8 F.4th at 942.

**Recently adopted amendment to the compassionate release policy statement.**

The Sentencing Commission's recently adopted amendment to the compassionate release policy statement, which took effect on November 1, 2023 (*See* 28 U.S.C. § 994(p)), revised the policy statement, making several substantive changes to it. The amendment moved the description of the permissible bases for a reduction in sentence from the Commentary to the text of the policy statement. It expanded the list of specified "extraordinary and compelling reasons" that warrant a reduction in sentence. One of the new subcategories, Medical Circumstances of the Defendant, applies specifically to Mr. Sosa.

**Extraordinary and compelling reasons that warrant a reduction in sentence.**

One of the new grounds for relief that the amendment added to §1B1.13(b)(1) is Medical Circumstances of the Defendant. This subcategory refers to medical conditions requiring "long term or specialized medical care that is not being provided" and without which the defendant "is at risk of serious deterioration in health or death." Mr. Sosa appears to be the individual that this amendment was intended to help. As described above, Mr. Sosa requires long-term, specialized medical care that is not currently being provided. Without it he is likely headed to dialysis, and he faces a high risk of stroke, heart attack, and renal failure. Under the newly amended compassionate release policy statement, these are clearly "extraordinary and compelling reasons" that warrant a reduction of Mr. Sosa's sentence.

**Applicable § 3553(a) factors**

The court also weighed the following § 3553(a) factors in its decision to grant the motion.

- Nature of the offense.  Mr. Sosa is serving a 37-month sentence for two non-violent tax offenses—a violation of 26 U.S.C. § 7201 (Tax Evasion), and violation of 26 U.S.C. § 7212(a) (Obstruction of Internal Revenue Laws). This was his first offense, and as shown on his "Needs Plan," he is eligible to receive credits under the First Step Act ("FSA").  These credits have advanced his release date by two months. In addition, the recently adopted Amendment 821 creates a new retroactive sentencing guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders) providing a decrease of two levels from the offense level determined under Chapters Two and Three for defendants who receive no criminal history points under Chapter Four and whose instant offense did not involve specified aggravating factors. Mr. Sosa would likely receive an additional seven-month reduction in his sentence if the court did not grant compassionate release.

- Characteristics of the defendant. Mr. Sosa's post-sentencing conduct is relevant to this motion. Mr. Sosa has had no disciplinary infractions while in BOP custody. He has volunteered to serve as an interpreter for Spanish speaking inmates when they meet with their Unit Team or the Institution's Medical Staff.  He has also been appointed as his Institution's Spanish Language GED Instructor.

- Protection of the public. The BOP's Prisoner Assessment Tool scored Mr. Sosa as having a "minimum risk of recidivism." ECF 168-11. Mr. Sosa's age (72) also makes his risk of recidivism extremely low. According to the Sentencing

Commission, only 13.4 percent of individuals aged 65 or older recidivate. U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017). The BOP has classified Mr. Sosa as minimum-security level.

- The need for the sentence to provide the defendant with needed medical care in the most effective manner. The BOP has failed to meet this standard for Mr. Sosa's many serious medical conditions. Mr. Sosa's family members are willing and able to transport him to his medical appointments upon release, and they have the financial resources to pay for these services.

- The need to provide restitution to any victims of the offense. The victim in the instant offense is the Internal Revenue Service (IRS) and the loss amount is $1,104,737, Mr. Sosa was ordered to pay restitution of $1,104,737. While it is true that Mr. Sosa is current in his court-ordered Financial Responsibility Payment on this debt, he has only paid a small amount owed on special assessments. He still owes the full amount of restitution. However, being released to his home, where he can receive adequate medical care may improve his ability to pay restitution, and definitely would not diminish it. The BOP doctor recently had him removed from his job on the Lock Down Crew and other work duties as "medically not cleared," stating that "working on the lockdown crew is bad for his blood pressure, increases his risk of stroke or heart attack." ECF 168-12.

## Conclusion

The court finds that Mr. Sosa suffers from serious medical conditions requiring "long term or specialized medical care that is not being provided" and without which he "is at risk of

serious deterioration in health or death." As a result, and for the reasons outlined above, the court hereby GRANTS Mr. Sosa's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c). ECF 167. For details about the release, see Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (AO 248), which the court incorporates by reference.

SO ORDERED this <u>5th</u> day of December, 2023.

BY THE COURT:

_____
DAVID SAM
Senior Judge,
United States District Court