IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SERGIO SOSA,<br><br>    Defendant. | MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 2:20-CR-0073 DS<br><br>Judge David Sam |

This matter is before the court on defendant Sergio Sosa's motion for compassionate release. The court has carefully considered all the briefing and has received input from the United States Probation Office. Mr. Sosa is a 72-year-old man suffering from ongoing health concerns including uncontrolled hypertension, stage 3 chronic kidney disease, elevated prostate specific antigens (PSA) indicative of a heightened risk of prostate cancer, and hyperlipidemia. He is seeking compassionate release due to his rapidly deteriorating health and the BOP's failure to provide timely care for his medical conditions. For the following reasons, the court grants his motion.

**A. The court hereby waives the requirement that Mr. Sosa complete the administrative remedy process prior to the court considering the motion.**

Mr. Sosa admits that he has not fully exhausted his administrative remedies before petitioning the court for relief under 18 U.S.C. § 3582(c)(1)(A). He requests that the court waive the requirement that he complete the administrative remedy process prior to the court considering his motion. On July 17, 2023, Mr. Sosa submitted a request for compassionate release to the

1

warden of his institution. On August 15, 2023, the warden denied this request. On August 24, 2023, Mr. Sosa filed a request for reconsideration of the denial of his compassionate release request. This request was also denied. He then filed a Regional Administrative Remedy Appeal, which the Administrative Remedy Coordinator received on September 29, 2023. The BOP's response was due on October 29, 2023, but the BOP unilaterally determined that it needed an extension and that its response would be due November 28, 2023. By December 22, 2023, The BOP still had not responded to Mr. Sosa's appeal. *See* Mr. Sosa's Reply Brief, ECF 193 at 3.

Exhaustion has been waived by courts in this circuit and across the country (1) if pursuing administrative remedies becomes unavailable due to the BOP's failure to participate in the process, (2) if the process is futile, or (3) if requiring exhaustion would result in irreparable harm. *Steck v. Checker*, 393 Fed.Appx. 558, 560 (10th Cir. 2010) (*citations omitted*). More than 84 days have passed since Mr. Sosa's last appeal and he has still not received the BOP's response. The court finds that the administrative process is no longer available to Mr. Sosa because the BOP has failed to participate in good faith, and thus Mr. Sosa has exhausted all available administrative remedies.

The court also agrees with defendant that even if the administrative remedy process were available to him, requiring him to continue would be futile. Defendant notes that between October 2022 and June 2023, approximately 39 requests for compassionate release were granted in the Tenth Circuit, all of which came through the courts at the request of defendants. The BOP did not grant a single one. Furthermore, according to the United States Sentencing Commission, nationwide the BOP granting compassionate release is "extremely rare" and "for the most part limited . . . to cases involving inmates who were expected to die within a year or were

2

profoundly and irremediably incapacitated."[1] Based on the BOP's history regarding compassionate release requests, the BOP will most likely deny Mr. Sosa's request. To require him to wait any longer for a BOP response, under the premise of exhaustion of administrative remedies would be futile.

Finally, the government acknowledged in its brief that the exhaustion requirement may sometimes be waived where irreparable harm would otherwise result. The Tenth Circuit Court of Appeals has stated that "We have occasionally waived exhaustion requirements where irreparable harm would otherwise result." *Steck v. Checker*, 393 Fed.Appx. 558, 560 (10th Cir. 2010) (citing *Forest Guardians v. U.S. Forest Serv.,* 579 F.3d, 1114, 1121-22 (10th Cir. 2009). The court in *Steck* went on to explain that the petitioner in that case had failed to point to any reason that remaining in his current BOP facility would constitute irreparable injury. According to the court, it would be "an undoubted inconvenience" to the petitioner, but not cause irreparable harm. Mr. Sosa, on the other hand, has identified compelling reasons why failure to grant him compassionate release would constitute irreparable harm. He has been trying for several months to exhaust his administrative remedies. In the meantime, his health has declined, and the BOP has not provided timely care for him. The court finds that this has caused and continues to cause irreparable harm to Mr. Sosa. The court will now consider whether Mr. Sosa has met the requirements to have his sentence reduced.

---

[1] United States Sentencing Commission, Amendments to the Guidelines, Amendment 814 (section "Reason for Amendment") (https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/appendixe-detail?APP_AMEND_ID-814).

**B. Mr. Sosa's medical conditions satisfy the "extraordinary and compelling circumstances" threshold under the recently adopted amendment to the compassionate release policy statement.**

The court may reduce Mr. Sosa's sentence and release him only if the following three requirements are met: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. Maumau,* 993 F.3d 821, 831 (10th Cir. 2021); *see also United States v. Hald*, 8 F.4th 932, 937-38 (10th Cir. 2021) (discussing this "three-step test" and citing *Maumau*, 993 F.3d at 831, and *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021)). The court need not address these requirements in any particular order. *Hald,* 8 F.4th at 942.

The government argues that Mr. Sosa cannot show any extraordinary or compelling reason to grant his request and reduce his sentence, and that his medical records from the BOP do not support his claims of a lack of and failure to provide proper care. The government argues that because Mr. Sosa's condition is "not a terminal or debilitating illness," it does not rise to the level of "extraordinary compelling." However, the government cites to and relies on the wrong standard. "Extraordinary and compelling" circumstances are those set out in Section 1B1.13 of the United States Sentencing Guidelines. The Sentencing Commission's November 1, 2023 amendment to the compassionate release policy statement (*See* 28 U.S.C. § 994(p)) revised the policy statement and made several substantive changes to it. The amendment moved the description of the permissible bases for a reduction in sentence from the Commentary to the text of the policy statement. It expanded the list of specified "extraordinary and compelling reasons"

4

that warrant a reduction in sentence. One of the new subcategories, Medical Circumstances of the Defendant, applies specifically to Mr. Sosa.

The new "Medical Circumstances of the Defendant" subcategory refers to medical conditions requiring "long term or specialized medical care that is not being provided" and without which the defendant "is at risk of serious deterioration in health or death." Mr. Sosa appears to be the individual that this amendment was intended to help. And the court so finds. As described below, Mr. Sosa requires long-term, specialized medical care that is not currently being provided. Without it he is likely headed to dialysis, and he faces a high risk of stroke, heart attack, and renal failure. Under the newly amended compassionate release policy statement, these are clearly "extraordinary and compelling reasons" that warrant a reduction of Mr. Sosa's sentence. The standard is not, as the government argues, whether Mr. Sosa suffers from "life threatening medical conditions," but whether he suffers from medical conditions that require long-term or specialized care that the BOP is not providing and put Sosa at risk of serious deterioration in health.

Mr. Sosa suffers from several medical conditions that require long-term or specialized care, including uncontrolled hypertension; chronic kidney disease, stage 3b; elevated prostate specific antigens (PSA); and hyperlipidemia. The defendant was hospitalized on May 8 when his condition appeared to be worsening rapidly and he failed to respond to changes in medication.

On May 30, the defendant was diagnosed with chronic kidney disease that, according to the BOP doctor's notes, was "LIKELY headed to dialysis. High risk of stroke, heart attack, renal failure." ECF 168-5. At that appointment he was referred for a renal ultrasound and a consultation with a kidney specialist. He finally received an ultrasound scan of his kidneys on August 30, 2023, and the conclusion was "Moderate-severe left and moderate right hydroureteronephrosis." Also on May 30, Mr. Sosa's bloodwork showed elevated PSA levels,

which have been identified as pre-indicators of prostate cancer. He was referred for a consultation with a urologist. Finally, *6 months later*, on November 28, 2023, he had a urology appointment and blood was drawn for a PSA test. ECF 187-2 at 217.

It is concerning that Mr. Sosa did not receive a follow-up consultation for six months. Also, the government does not address the BOP doctor's statement that Sosa is "LIKELY headed to dialysis and renal failure." Mr. Sosa, while suffering the medical conditions outlined in his medical records, was required to work 12-15 hours a day, twelve days straight, in food service for the U.S. Penitentiary, which work prevented Mr. Sosa from attending to his "pill line" times to receive his medications. A review of Mr. Sosa's medical records shows that his blood pressure is alarmingly high and uncontrolled. The government claims that his blood pressure is trending down, but that does not appear to be true. Mr. Sosa's blood pressure readings should be taken daily, but the frequency of those readings have decreased over time. Between June and July 2023, 20 days passed between readings. *Reply,* pages 7-8. As recently as December 10, 2023, his blood pressure was taken three times, and it was at extremely dangerous levels each time: 202/86, 160/89, and 189/72. Despite the BOP simply increasing Sosa's dosage of Lisinopril, he is still getting worse.

The government asserts that Mr. Sosa's blood pressure got worse because he missed an appointment or was not compliant with taking his medication. However, Mr. Sosa states that the only time he missed an appointment was when he was on lockdown crew and BOP staff refused to let him go back for his appointment. He also states that he was never out of compliance with taking his medication. Nurse Maltezo, after changing Mr. Sosa to "pill line" so he took his medications all at one time, recorded on November 20, 2023 that Mr. Sosa's blood pressure was still elevated (159/66) and "not much changed from no pill line to pill line."

6

When Mr. Sosa's kidney failure was diagnosed in May 2023, his blood work showed a GFR of 52. As of November 20, 2023, his GFR was 33. Anything below a GFR rating of 60 is considered kidney failure, and Sosa's kidney functions have decreased rapidly over the last 6 months according to the medical records before the court. There is no question that Mr. Sosa's medical conditions, which require long-term and specialized care, are not being treated, and his health is seriously deteriorating as a result.

The government suggests that "the Court might consider ordering that Mr. Sosa be transferred to a Federal Medical center for the remainder of his sentence, where he could receive 24/7 care. Such a move would provide Mr. Sosa with additional care but would completely disregard the required analysis of section 1B1.13(b)(1), regarding the extraordinary and compelling reasons that this court has already found warrant Mr. Sosa's reduction in sentence.

### C. Applicable § 3553(a) factors weigh in favor of granting compassionate release.

Finally, the court must weigh applicable § 3553(a) factors in its decision on the motion. A number of factors are the same as they were at sentencing: the need for the sentence imposed to reflect the seriousness of the offence, to promote respect for the law, to provide just punishment for the offence, and to afford adequate deterrence. These are important factors. But there are other important factors that the court considered in its decision.

- Nature of the offense. Mr. Sosa is serving a 37-month sentence for two non-violent tax offenses—a violation of 26 U.S.C. § 7201 (Tax Evasion), and violation of 26 U.S.C. § 7212(a) (Obstruction of Internal Revenue Laws). This was his first offense, and as shown on his "Needs Plan," he is eligible to receive credits under the First Step Act ("FSA"). These credits have advanced his release date by two months. In addition, the recently adopted Amendment 821 creates a

7

new retroactive sentencing guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders) providing a decrease of two levels from the offense level determined under Chapters Two and Three for defendants who receive no criminal history points under Chapter Four and whose instant offense did not involve specified aggravating factors. Mr. Sosa has been recommended for an additional seven-month reduction in his sentence if the court were to not grant compassionate release.

- Characteristics of the defendant. Mr. Sosa's post-sentencing conduct is relevant to this motion. Mr. Sosa has had no disciplinary infractions while in BOP custody. He has volunteered to serve as an interpreter for Spanish speaking inmates when they meet with their Unit Team or the Institution's Medical Staff. He has also been appointed as his Institution's Spanish Language GED Instructor.

- Protection of the public. The BOP's Prisoner Assessment Tool scored Mr. Sosa as having a "minimum risk of recidivism." ECF 168-11. Mr. Sosa's age (72) also makes his risk of recidivism extremely low. According to the Sentencing Commission, only 13.4 percent of individuals aged 65 or older recidivate. U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017). The BOP has classified Mr. Sosa as minimum-security level.

- The need for the sentence to provide the defendant with needed medical care in the most effective manner. The BOP has failed to meet this standard for Mr. Sosa's many serious medical conditions. Mr. Sosa's family members are willing and able to transport him to his medical appointments upon release, and they have the financial resources to pay for these services.

**Conclusion**

The court finds that Mr. Sosa suffers from serious medical conditions requiring "long term or specialized medical care that is not being provided" and without which he "is at risk of serious deterioration in health or death." As a result, and for the reasons outlined above, the court hereby GRANTS Mr. Sosa's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c). ECF 167. For details about the release, see Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (AO 248), which the court incorporates by reference.

SO ORDERED this  28th  day of December, 2023.

BY THE COURT:

_____
DAVID SAM
Senior Judge,
United States District Court